## Dalsimer v. Pennsylvania Company, etc., et al.

*Hirschwald, Goff & Rubin,* for plaintiff.

*Edmonds, Obermayer & Rebmann,* for intervener.

CARROLL, J., May 19, 1941.—Plaintiff, Beatrice L. Dalsimer, filed a bill in equity against The Pennsylvania Company for Insurances on Lives and Granting Annuities, a banking corporation, to restrain the transfer or other disposition of a certificate of stock No. D42441, for 32 shares of the capital stock of Bank of America National Trust & Savings Association, and to compel defendant to deliver the certificate to plaintiff.

After the bill in equity was filed, Irvin L. Stone, the trustee in bankruptcy of McMillan, Rapp & Company, a corporation, filed a petition to intervene in these proceedings as a party defendant, which petition was granted. Thereafter, the intervening defendant filed an answer to plaintiff's bill of complaint. Defendant bank filed its answer, stating that it had no interest in the said certificate and that it was holding the certificate as a stakeholder.

Plaintiff and the intervening defendant have agreed to all essential facts. They follow:

On March 20, 1939, plaintiff, Beatrice L. Dalsimer, purchased from McMillan, Rapp & Company, a brokerage concern, maintaining an office in the City of Philadelphia, 32 shares of the capital stock of Bank of America National Trust & Savings Association, and in payment therefor plaintiff directed McMillan, Rapp & Company to apply the proceeds of the sale of 32 shares of Atchison, Topeka & Santa Fe Railway Company. The proceeds, $1,059.70, plus $20.30 in cash, paid in full the purchase price for the 32 shares of Bank of America National Trust & Savings Association stock, namely, $1,080.

On or about May 15, 1939, a certificate of stock, No. D42441, for 32 shares of the capital stock of Bank of America National Trust & Savings Association was received by McMillan, Rapp & Company, the certificate having been previously registered in the name of plaintiff, Beatrice L. Dalsimer. This stock certificate contained the typewritten words "Beatrice L. Dalsimer" and stated that Beatrice L. Dalsimer is the owner of 32 shares of the capital stock of Bank of America National Trust & Savings Association.

Shortly after June 9, 1939, McMillan, Rapp & Company delivered possession of the said certificate to defendant, The Pennsylvania Company, together with other securities as collateral for a loan from the bank. The stock certificate was accompanied by a stock power purporting to be signed in blank by plaintiff, Beatrice L. Dalsimer, which signature in fact was a forgery. The answer of the intervening defendant, the trustee in bankruptcy, Irvin L. Stone, denied that the signature was a forgery. At the conclusion of the hearing, the court granted an extension of time to permit the intervening defendant to have the alleged signature analyzed by a handwriting expert. Following this, the intervening defendant reported to the court that the signature was a forgery.

At no time had plaintiff authorized McMillan, Rapp & Company to transfer the certificate or use the certificate for 32 shares in any manner whatever, and plaintiff had no knowledge of the delivery to or possession of the said certificate by The Pennsylvania Company, and plaintiff had never ratified its delivery.

McMillan, Rapp & Company filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of Pennsylvania on February 20, 1940, and was adjudicated a bankrupt on the same day. On April 5, 1940, Irvin L. Stone, intervening defendant, was appointed trustee in bankruptcy of McMillan, Rapp & Company.

Subsequent to the bankruptcy, The Pennsylvania Company liquidated the loan previously made to McMillan, Rapp & Company, and returned the surplus collateral to the intervening defendant, with the exception of certain securities, including plaintiff's stock certificate which The Pennsylvania Company continues to hold.

Defendant, The Pennsylvania Company, takes the position of a stakeholder and makes no claim for the certificate. . . .

There is but one question raised by the intervening defendant for determination: Is Beatrice L. Dalsimer, plaintiff, entitled to receive from defendant, The Pennsylvania Company, possession of certificate No. D42441 for 32 shares of stock of the Bank of America National Trust & Savings Association, free from all claims of the intervening defendant, the trustee in bankruptcy, in view of the provisions of section 60 (e) of the Bankruptcy Act of July 1, 1898, c. 541 (30 Stat. at L. 544), as amended by the Chandler Act of June 22, 1938, c. 575 (52 Stat. at L. 840). Section 60 (e) 4 provides as follows:

"No cash received by a stockbroker from or for the account of a customer for the purchase or sale of securities, and no securities or similar property received by a stockbroker from or for the account of a cash customer for sale

and remittance or pursuant to purchase or as collateral security, or for safekeeping, or any substitutes therefor or the proceeds thereof, shall for the purposes of this subdivision (e) be deemed to be specifically identified, *unless such property remained in its identical form in the stockbroker's possession until the date of bankruptcy, or unless such property or any substitutes therefor or the proceeds thereof were, more than four months before bankruptcy or at a time while the stockbroker was solvent, allocated to or physically set aside for such customer, and remained so allocated or set aside at the date of bankruptcy".* (Italics supplied.)

Section 60(e) is an innovation in the bankruptcy law. It provides for a separation into three classes of creditors of a bankrupt stockbroker: (1) Cash customers; (2) all other customers; and (3) general creditors.

The intervening defendant contends that plaintiff comes under class (2), and that she must forego all rights in and to the stock certificate and that she should present a claim against the "single and separate fund" to be created by the sale of securities bought on margin and other property relegated to this fund by section 60(e).

On the other hand, plaintiff's position is that she is a cash customer, and in class (1), having paid for the stock in full and further, that she can easily identify her stock and, therefore, under section 60(e) is entitled to the particular stock certificate claimed.

The court rejects the contention of the intervening defendant, and concludes that there is nothing in section 60(e) of the Chandler Act, nor in the statutory or decision law of Pennsylvania that deprives plaintiff of the right to immediate possession and ownership of the said stock certificate.

Plaintiff is in the category of a cash customer, able to identify specifically her property within the meaning of section 60(e)4. The last provision of section 60(e)4 provides that securities shall be specifically identified

when the *"property or any substitutes therefor or the proceeds thereof were, more than four months before bankruptcy or at a time while the stockbroker was solvent, allocated to or physically set aside for such customer, and remained so allocated or set aside at the date of bankruptcy"*. (Italics supplied.) Certainly, plaintiff comes within that classification of cash customer. Plaintiff bought the stock in question on March 20, 1939, and paid the small balance of $20.30 in cash on June 9, 1939, to complete payment of the purchase price. The voluntary petition in bankruptcy and adjudication of McMillan, Rapp & Company as a bankrupt occurred on February 20, 1940. There is no doubt of the setting aside or allocation of the shares of stock purchased.

On or about May 15, 1939, certificate No. D42441 was delivered to McMillan, Rapp & Company, already registered in the name of plaintiff. The stock certificate certified that Beatrice L. Dalsimer is the owner of 32 shares of Bank of America National Trust & Savings Association. More than four months elapsed between the time of the allocation of the stock and the adjudication in bankruptcy. In fact, more than nine months had passed.

Although the language of the law is clear and there is no need to resort to the legislative history of section 60 (e) to ascertain the intention of Congress, nevertheless, the report of the Senate Judiciary Committee of April 20, 1938, Report 1916, p. 5, is of interest. It states:

"There are no provisions in the present act specifically relating to these cases. The committee believes that the new subdivision (e) proposed in the House bill covers the difficult situations which arise in such cases, and have perfected it by providing in *clause 4* that a segregation of securities made more than four months before bankruptcy, regardless of the stockbroker's solvency or insolvency, shall be effective. This change accords with the policy of the act in analogous situations, in which the

period of four months is used as a bar time". (Italics supplied.)

In the matter of McMillan, Rapp & Company, 38 Fed. Supp. 45, U. S. D. C., Eastern District of Pennsylvania, the reclamation claim of Katie M. Weiss for 10 shares of Bank of America National Trust & Savings Association was allowed. In a decision of Bard, J., rendered April 16, 1941, the court held that claimant was a cash customer, and the securities, having been registered in claimant's name, were specifically identifiable and claimant was clearly entitled to them.

Then again, plaintiff's right to this stock is confirmed by another clause in section 60 (e) 4 which provides that property shall be considered as having been specifically identified when the *"property remained in its identical form in the stockbroker's possession until the date of bankruptcy."* (Italics supplied.) This provision, no doubt, becomes important when the stockbroker is insolvent and the transaction occurs within four months of bankruptcy.

It is admitted that the pledge of the certificate to the bank was effected by means of a forged stock transfer. Forgery is a felony under the Pennsylvania Act of June 24, 1939, P. L. 872, sec. 1014, 18 PS §5014, and the act previously in force. Then, the decisions construing the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, sec. 1, 15 PS §301 et seq., in force in Pennsylvania, hold that a pledgee acquires no right of possession or title in pledged stock bearing a forged endorsement of the owner's name: Barnard et al. v. Standard Oil Co. of Indiana et al., 110 F.(2d) 417 (C. C. A., 7th, 1940) ; Townsend v. Union Trust Co. of Donora et al., 2 Fed. Supp. 734 (D. C., West. Dist. Penna. 1933).

In the matter before us, nothing happened legally when McMillan, Rapp & Company pledged plaintiff's stock certificate with The Pennsylvania Company. The right of possession continued to be in the stockbroker so long as

the owner did not seek to terminate this right. In this circumstance, the certificate should be considered to be in the stockbroker's possession, actually a constructive possession. Of course, the court does not hold that every conversion or unlawful dealing with securities by a stockbroker will bring into play the principle of constructive possession. Since the owner of securities is entitled to them under section 60(e)4 if the "property remained in its identical form in the stockbroker's possession until the date of bankruptcy", a change of physical possession alone, produced by burglary, larceny, or, as in this case, forgery, should certainly not be permitted to affect ownership of the securities.

There is no question whatever of the customer being able to identify her property. A stock certificate was issued by the Bank of America National Trust & Savings Association, and registered in plaintiff's name as owner by the corporation, and delivered to McMillan, Rapp & Company.

In an article "Stockbrokers' Bankruptcies: Problems Created by the Chandler Act", by John A. Gilchrist, in 24 Minn. Law Rev. 52, 68, various methods of segregation of securities are discussed. The author states:

"There are several ways of specifically segregating securities. In the first place, wholly owned securities, such as those deposited by a customer with a broker for safekeeping, may be physically set aside and tagged with the customer's name. Securities purchased by the broker and fully paid for, or securities constituting excess margin, may be identified either by certificate number or by the broker's physically setting them aside in an envelope or box, bearing the customer's name, or by his tagging the particular certificate.

"It is primarily a question of fact whether securities which do not remain in their identical form have been sufficiently allocated to or physically set aside for a customer so that he may reclaim them under paragraph (4).

The practices, above described, would seem to meet the requirements of that paragraph so that a cash customer may reclaim his securities so segregated".

For the court to compel plaintiff, a cash customer, to give up her interest in the stock certificate after it has been specifically identified as her property, and make her claim as a creditor against the "single and separate fund", would constitute a taking of her property without due process of law. . . .

### Decree nisi *

And now, to wit, May 19, 1941, upon consideration of the foregoing case, it is ordered, adjudged, and decreed that defendant, The Pennsylvania Company for Insurances on Lives and Granting Annuities, is enjoined from transferring certificate no. D42441 for 32 shares of the capital stock of the Bank of America National Trust & Savings Association, and the said defendant is directed to surrender the said certificate to plaintiff, Beatrice L. Dalsimer, and such certificate, upon surrender to plaintiff, shall be free from all claims and liens of defendant, The Pennsylvania Company for Insurances on Lives and Granting Annuities, and of the intervening defendant, trustee in bankruptcy of the estate of McMillan, Rapp & Company, Irvin L. Stone; costs to be paid by the intervening defendant.

The prothonotary will enter this decree nisi and give notice thereof to the parties, or their counsel, and if no exceptions are filed thereto within 10 days, either party may present to the court a form of final decree to be entered in the case.

---

* NOTE.—A final decree in the terms of the decree nisi was entered on June 4, 1941. On June 12, 1941, the final decree was marked "satisfied", and the suit settled, discontinued and ended.